**UNITED STATES of America, Plaintiff,**

v.

**Anthony IMBRUNONE, Defendant.**

**Anthony IMBRUNONE, Plaintiff,**

v.

**UNITED STATES INTERNAL REVENUE SERVICE, Defendant.**

Crim. A. No. 47075 and Civ. A. No. 4–70099.

United States District Court,
E. D. Michigan, S. D.

July 17, 1974.

Clyde Pritchard, Detroit, Mich., for plaintiff in 47075.

Erwin A. Rubenstein, Southfield, Mich., for defendant in 47075 and plaintiff in 4–70099.

Fred M. Mester, Detroit, Mich., Richard A. Scully, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant in 4–70099.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

The motions brought by Anthony Imbrunone, as defendant in Criminal No. 47075, and by the Internal Revenue Service, as defendant in Civil No. 4–70099, involve the same issue: the availability of certain documents in the possession of the Internal Revenue Service.

On April 12, 1972 Imbrunone was indicted for alleged violation of 26 U.S.C. § 7201, tax evasion (Criminal No. 47075). He has now filed a motion, pursuant to Fed.R.Crim.P. 16(b), for production of certain documents.

Plaintiff Imbrunone has also filed a civil complaint seeking to enjoin the Internal Revenue Service from withholding these same documents (Civil No. 4–70099). Defendant Internal Revenue Service has filed a motion for summary judgment and the plaintiff, in response, has filed a cross-motion for summary judgment.

The documents sought by Imbrunone, by both civil and criminal proceedings, are certain sections of handbooks prepared and used by the Audit Division of the Internal Revenue Service.

The designation and description of these various sections was supplied to the court in the affidavit of Mr. Singleton B. Wolfe, Director of the Audit Division of the Internal Revenue Service. The affidavit identified the requested material in the following fashion:

". . . [I]n furtherance of its objectives, particularly with respect to the detection of noncompliance with the Federal tax law, the Audit Division has developed specific investigatory techniques and tolerances which provide its personnel with an effective and efficient methodology to be used in conjunction with their law enforcement efforts.

". . . [S]uch law enforcement material is contained in sections (10)72(3), (10)76(5)–(8), (10)82, and (10)91(4) and (5) of IRM 4231 —The Audit Techniques Handbook for Internal Revenue Agents.

"Section (10)72(3) discusses the methods by which tax returns are scrutinized for indications of fraud.

"Sections (10)76(5)–(8) lists audit techniques designed to detect various tax evasion schemes.

"Section (10)82 discusses sources of lead information indicating the possibility of tax evasion by persons associated with the party under investigation.

"Sections (10)91(4) and (5) sets forth guidelines for revenue agents regarding the depth of their examinations where the possibility of fraud exists.

". . . [L]aw enforcement material is also contained in IRM 4235 —The Technique Handbook for In-Depth Audit Investigation.

"Section 441.3 describes, as does section (10)72(3) of IRM 4231 previously referred to, the manner in which examining agents scrutinize returns for possible leads which will establish noncompliace with the Federal tax laws.

"Section 442.3 details factors which should be considered during the course of an audit to determine whether taxpayers, other than the one under investigation, may also be appropriate subjects for examination.

"Sections 630, 660, 680(3), 691, 6(12)0, and 6(13)0 list and discuss a variety of special examination techniques to be used by a revenue agent in the conduct of an audit. Specifically, in these sections are contained: (1) Instructions as to how the various records maintained by financial institutions should be analyzed to determine a taxpayer's true income; (2) The methods to be employed in ascertaining the location of missing taxpayers; (3) The manner in which the Service's data processing facilities can be utilized to uncover instances of noncompliance with the Federal tax laws; (4) The procedure to be fol-

lowed in canvassing those banks through which a taxpayer under investigation may have conducted his financial affairs; and (5) The guidelines to be used in determining whether those transactions reported by a taxpayer on his return are properly characterized.

"Sections 722, 732, 743, 754, 773, 774, 783, 7(12)2, 7(13)3, 7(13)4, 7(16)3, 7(16)4(1)–(4) are investigative techniques designed to alert a revenue agent to the possible presence of a particular tax evasion scheme in a manner under investigation. These techniques not only serve to focus attention to this type of activity but also to provide a method by which a suspicion in this regard can be confirmed. The investigatory techniques discussed in these sections relate to such areas as payroll padding, salary havens, shifting of income and losses, nominee ownerships, kickbacks and payoffs to or for public officials, illegal activities affecting payoffs, and bankruptcy frauds.

"Sections 811.7, 812.5, 812.6, 813.21, 813.22(5), 813.23, 813.5, 814.2, 815.4. 815.5, 815.6, 816.4, 817.5, 818.3, 818.4, 821.4, 822.5, 823.5, 824.3, 824.4, 826.2, and 827.2, on the other hand, set forth in detail specialized investigative techniques relating to specific activities, be they legal or illegal. These techniques reveal certain practices commonly employed in these enterprises to avoid payment of Federal income tax and the manner in which their presence can be detected. Specialized auditing techniques, which have been developed, relate to such areas as pornography, stack frauds, loan sharking, gambling, credit card frauds, extortion, prostitution, and fencing.

". . . [S]ection 4567.21(8) now 4565.51(8) establishes those tolerances and criteria by which the Internal Revenue Service, through its agents, determines whether the examination of a return on file for more than six years is warranted. These tolerances and criteria are used in conjunction with fraud investigations, since the six year statute of limitations pertaining to the assessment and collection of Federal taxes is not applicable.

". . . [A]ll of the material referred to above contains many of the internal rules and practices relating the Internal Revenue Service's audit function, which are designed to facilitate, as effectively as possible, the detection of Federal tax avoidance on the part of any taxpayer and in so doing promote voluntary self compliance."

### Defendant Imbrunone's Motion for Production of Documents (Criminal No. 47075)

Defendant contends that prior to the issuance of the indictment in this case he voluntarily provided the Organized Crime Division of the Internal Revenue Service with ledgers, accounting statements and other taxpayer records upon which the indictment was based; that this information was provided to Mr. James Feaster, who represented himself as a Revenue Agent seeking the information only for purposes of a civil tax audit, and; that Feaster never gave him the *Miranda* type warnings prior to his receipt of the taxpayer records. He contends Feaster misrepresented himself in that, from the beginning, Feaster was seeking information to be used in a criminal proceeding against him. Defendant contends he needs the material set out in the Wolfe affidavit to prove Feaster was a "special agent" or, at least, a "quasi-special agent" and that this proof will be presented in a subsequent motion to suppress.

The Internal Revenue Service contends the *Miranda* warnings are not required in this type of situation and the requested material is, therefore, irrelevant. In addition, the Internal Revenue Service contends Feaster was an Internal Revenue Agent with the responsibility of examining tax returns to determine their accuracy, and that he was not connected with the Intelligence Division

and was not a "special agent" or a "quasi-special agent". Furthermore, they contend the material procured by Feaster was not personal records and was voluntarily given to him by the defendant's accountant.

The Sixth Circuit, in United States v. Stribling, 437 F.2d 765 (6th Cir. 1971), has squarely faced this issue. In *Stribling*, the defendant was interviewed by an Internal Revenue Agent about the tax liability of a third person. After these interviews the defendant voluntarily filed amended returns and a net worth statement. Later, when the defendant was indicted for tax evasion, he filed a motion to suppress contending the Internal Revenue Agent misled and lulled the defendant into believing the disclosures would be used solely to determine the correctness of the amended returns and would not lead to criminal charges.

In holding that *Miranda* requirements are limited to in-custody interrogations the Court of Appeals stated:

"An Internal Revenue Agent assigned to make a routine audit ought to be circumspect in interviewing a taxpayer. The agent should not assume that such a taxpayer has cheated the Government and offend him by warning him as to the possibility of criminal prosecution and advising him as to his constitutional rights." 437 F.2d at 771.

■ The decision in United States v. Stribling, *supra,* has direct application to the present case. The defendant's contention that he was entitled to *Miranda*

warnings in this case prior to his relinquishment of certain financial data is without merit.

*The Parties' Cross-Motions for Summary Judgment (Civil No. 4-70099)*

Plaintiff has alleged in his complaint in this case that the material being sought, and described in the Wolfe affidavit, should be available by application of the Freedom of Information Act of 1966, specifically 5 U.S.C. § 552(a)(2)(C) and (a)(3),[1] and that defendant Internal Revenue Service should be enjoined from withholding this material.

5 U.S.C. § 552(a)(2)(C) deals specifically with staff manuals, such as the Internal Revenue Manual in this case, and provides for the publication of only "administrative staff manuals and instructions to staff that affect a member of the public". The legislative history of the Act clarified what type of staff manual material would be available to the public by providing:

"The limitation of the staff manuals and instructions affecting the public which must be made available to the public to those which pertain to administrative matters rather than to law enforcement matters protects the confidential nature of instructions to personnel prosecuting violations of law in court, while permitting a public examination of the basis of administrative action." S.Rep.No. 813, 89th Cong., 1st Sess. 2 (1965).

1. 5 U.S.C. § 552(a)(2)(C) provides in pertinent part:
"(a) Each agency shall make available to the public information as follows:
  * * * * *
  (2) Each agency, in accordance with published rules, shall make available for public inspection and copying—
  * * * * *
  (C) administrative staff manuals and instructions to staff that affect a member of the public . . . ."
5 U.S.C. § 552(a)(3) provides in pertinent part:

"(3) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, on request for identifiable records made in accordance with published rules stating the time, place, fees to the extent authorized by statute, and procedure to be followed, shall make the records promptly available to any person. On complaint, the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant . . . ."

Defendant contends as a matter of law there is no genuine issue of material fact since the requested material constitutes "law enforcement" staff material rather than "administrative" staff material, which need not be disclosed under 5 U. S.C. § 552(a)(2)(C) or (a)(3).

The issue presented in these cross-motions for summary judgment, therefore, is whether the requested material constitutes "law enforcement" staff material or is merely "administrative" staff material.

The Sixth Circuit, in Hawkes v. Internal Revenue Service, 467 F.2d 787 (6th Cir. 1972), recognized the dichotomy between material which should be disclosed because it is merely "administrative" and which should not be disclosed because it relates to "law enforcement". In *Hawkes* the defendant had been indicted for criminal tax fraud. Pursuant to Fed.R.Crim.P. 16 and 17 he sought discovery of (1) copies of forms 899 and 4340, recording past assessments and payments relevant to Hawkes' federal tax obligations, (2) copies of Internal Revenue Service documents pertaining to the "closing" of an audit of Hawkes' 1965 tax returns, and (3) specified portions of the Internal Revenue Manual relating to the examination of returns, interrogation of taxpayers by agents of the Service and other matters which Hawkes felt would be useful to his defense. Later, Hawkes filed a civil suit under the Freedom of Information Act requesting the same material. The District Court granted the government's motion to dismiss the civil suit holding that the Internal Revenue Service need not disclose the material under the Freedom of Information Act.

The Court of Appeals remanded the case to the District Court in light of the construction the Court of Appeals gave the Act, and to allow the District Judge to examine the materials *in camera* to determine if it should be disclosed. In defining what they considered to be material relating to "law enforcement" the Court stated:

". . . [I]t would seem logical to assume that the intent of the limit on (a)(2)(C) was to bar disclosure of information which, if known to the public, would *significantly impede* (emphasis in original) the enforcement process.

\* \* \* \* \* \*

"The exception for law enforcement materials contained in (a)(2)(C) is, as suggested above, a very narrow one and is to be applied only where the sole effect of disclosure would be to enable law violators to escape detection." 467 F.2d at 795.

Prior to the hearing on these motions plaintiff Imbrunone had requested that the court examine the disputed material *in camera*. During oral argument on these motions, however, plaintiff admitted that in light of Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), the court was not required, by the language in Hawkes v. United States, *supra,* to examine the requested materials *in camera* to determine if they should be disclosed. The court agrees. In Environmental Protection Agency v. Mink, *supra,* decided approximately four (4) months after Hawkes v. United States, *supra,* the Court held that *in camera* inspection is not always necessary when material is being sought pursuant to the Freedom of Information Act. The Court reasoned that:

"Plainly, in some situations, *in camera* inspection will be necessary and appropriate. But it need not be automatic. An agency should be given the opportunity, by means of detailed affidavits or oral testimony, to establish to the satisfaction of the District Court that the documents sought fall clearly beyond the range of material that would be available to a private party in litigation with the agency. The burden is, of course, on the agency resisting disclosure, 5 U.S.C. § 552(a)(3), and if it fails to meet its burden without *in camera* inspection, the District Court may order such

inspection . . . In short, *in camera* inspection of all documents is not a necessary or inevitable tool in every case." 410 U.S. at 93, 93 S.Ct. at 839.

In the present case the court is convinced the material requested by plaintiff Imbrunone, which has been meticulously described in the Wolfe affidavit to the extent that an *in camera* inspection is not required, constitutes "law enforcement" material which, if disclosed, would significantly impede the enforcement process of the Internal Revenue Service and, therefore, need not be disclosed under 5 U.S.C. § 552(a)(2)(C) or (a)(3). Hawkes v. United States, *supra*; City of Concord v. Ambrose, 333 F.Supp. 958 (N.D.Cal.1971).

For the foregoing reasons, the defendant's motion for production of documents in Criminal No. 47075 and the plaintiff's motion for summary · judgment in Civil No. 4–70099 are denied. The defendant's motion for summary judgment in Civil No. 4–70099 is granted.

So ordered.