David I. CAPLAN, Plaintiff,

v.

BUREAU OF ALCOHOL, TOBACCO & FIREARMS OF the DEPARTMENT OF the TREASURY OF the UNITED STATES of America, and all of its Agents, Defendants.

No. 77 Civ. 4313.

United States District Court, S. D. New York.

Jan. 13, 1978.

As amended April 13, 1978.

in raids, methods of gaining entry to buildings by "force or strategy", factors relating to the timing of raids, techniques used by suspects to conceal contraband, and other topics.

Rex D. Davis, the director of the agency, has submitted an affidavit outlining section-by-section the agency's reasons for non-disclosure. Davis asserts that disclosure of various sections would hinder investigations, enable violators to avoid detection, and jeopardize the safety of government agents. We believe that release of some sections could indeed have these effects. However, the techniques described in other sections the agency seeks to withhold are matters of common knowledge and their disclosure could have no appreciable impact on enforcement. In support of non-disclosure the agency invokes the Act's (b)(2) and (b)(7) exemptions, as well as subsection (a)(2)(C).

Plaintiff has cited no cases, and our research has not uncovered any, in which courts have ordered release of a manual where the effect would be to impede enforcement or endanger agents. Courts that have considered disclosure of such material have exempted it under one or another of the provisions here relied on by the agency. However, after careful consideration of the cases, as well as the Act's language and legislative history, we are unable to conclude that any of those provisions apply. We are nonetheless hesitant to order disclosure of such sensitive material, especially in light of Congress' exemption from mandatory disclosure of identical material where contained in "investigatory records compiled for law enforcement purposes."[1] Because release here could lead to such regrettable consequences, and because Congress has so clearly indicated its concern over disclosure of "investigatory techniques" in other contexts, we feel that this case is one in which a court is warranted in exercising equitable discretion to decline to order disclosure under the Act.

David I. Caplan, pro se.

Robert B. Fiske, Jr., U. S. Atty., New York City, for defendants; Carl Solberg, Asst. U. S. Atty., New York City, of counsel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Plaintiff in this Freedom of Information Act suit is an attorney who is writing a book on the constitutional implications of firearms control laws and their enforcement. He seeks disclosure of withheld portions of a pamphlet entitled "Raids and Searches" from the Bureau of Alcohol, Tobacco, and Firearms. The matter is now before us on cross-motions for summary judgment.

Pursuant to subsection (a)(4)(B) of 5 U.S.C. § 552 ["the Act"], the agency has submitted the entire pamphlet to the Court for *in camera* inspection. Upon inspection we have found that the withheld portions include descriptions of the equipment used

---

1. 5 U.S.C. § 552(b)(7).

We will first consider the provisions relied upon by the agency (which we find not to warrant withholding disclosure) and then discuss the exercise of our equitable discretion (which we have decided to exercise in favor of withholding some material).

## I. *Provisions Relied on by the Agency.*

### A. *The (b)(2) Exemption*

[2, 3] The agency claims that the withheld portions fall under the terms of subsection (b)(2), which exempts from mandatory disclosure matters "related solely to the internal personnel rules and practices of an agency." The Court of Appeals for this Circuit has noted that the House and Senate Reports on the (b)(2) exemption "diametrically clash". *Rose v. Department of Air Force* (2d Cir. 1974) 495 F.2d 261, 264, *aff'd* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). The Senate Report stated:

"Exemption No. 2 relates only to the internal personnel rules and practices of an agency. Examples of these may be rules as to personnel's use of parking facilities or regulations of lunch hours, statements of policy as to sick leave, and the like." S. Rep. No. 813, p. 8.

The House Report on the other hand commented:

"2. Matters related solely to the internal personnel rules and practices of any agency: Operating rules, guidelines, and manuals of procedure for Government investigators or examiners would be ex-

empt from disclosure, but this exemption would not cover all 'matters of internal management' such as employee relations and working conditions and routine administrative procedures which are withheld under the present law." H.R.Rep. No. 1497, p. 10, U.S.Code Cong. & Admin. News 1966, pp. 2418, 2427.

Neither the Court of Appeals nor the Supreme Court found it necessary to resolve this conflict in *Rose*.[2] Now faced with that necessity, we conclude that "personnel rules and practices", by the plain meaning of those words, relate only to issues concerning conditions of employment of the type on which the Senate Report focused. Accord, see *Hawkes v. Internal Revenue Service* (6th Cir. 1972) 467 F.2d 787, 797. The withheld portions manifestly are not of this nature and thus are not exempt from disclosure under (b)(2).[3]

### B. *The (b)(7) Exemption*

■ The agency also relies on the (b)(7) exemption. That subsection states in pertinent part that the Act's mandatory disclosure provisions do not apply to

"investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . (E) disclose investigative techniques and procedures . ."

Although the withheld portions of "Raids and Searches" deal with investigative techniques, the manual is clearly not an "inves-

---

**2.** The Supreme Court, after granting certiorari in *Rose*, expressed a general preference for the Senate Report "at least where the situation is not one where disclosure may risk circumvention of agency regulation." 425 U.S. at 369, 96 S.Ct. at 1603. The rationale behind (b)(2), as understood by the Senate, is apparently to protect agencies from the needless burden of disclosing " 'minor or trivial matters,' " while still mandating disclosure of " 'those more substantial matters which might be the subject of a legitimate public interest.' " *Rose,* supra 425 U.S. at 365, 96 S.Ct. at 1601, quoting *Vaughn v. Rosen* (1975) 173 U.S.App.D.C. 187, 193, 523 F.2d 1136, 1142.

In choosing between the House and Senate understandings of the (b)(2) exemption, we are mindful that the " 'policy of the Act requires that the disclosure requirements be construed

broadly, the exemptions narrowly.' " *Rose,* supra 425 U.S. at 367, 96 S.Ct. at 1601, quoting *Vaughn v. Rosen,* supra, 173 U.S.App.D.C. at 193, 523 F.2d at 1142.

**3.** We are aware that several courts have relied on the (b)(2) exemption to justify non-disclosure of similar manuals. See e. g. *Ginsberg, Feldman & Bress v. Federal Energy Administration* (D.D.C. June 18, 1976) Civ. Action No. 76–27 aff'd (D.C.C. Feb. 14, 1978), panel opinion vacated, reargued en banc (April 6, 1978); *Tietze v. Richardson* (S.D.Tex.1972) 342 F.Supp. 610; *Cuneo v. Laird* (D.D.C.1972) 338 F.Supp. 504, rev'd on other grounds sub nom. *Cuneo v. Schlesinger* (1973) 157 U.S.App.D.C. 368, 484 F.2d 1086.

tigatory record." See *Chamberlain v. Alexander* (S.D.Ala.1976) 419 F.Supp. 235, 240, *Ginsberg, Feldman & Bress v. Federal Energy Admin.* (D.D.C. June 18, 1976) Civil Action No. 76–27, aff'd (D.C.C. Feb. 14, 1978), panel opinion vacated, reargued en banc (April 6, 1978). It was not compiled in aid of any "concrete, prospective" proceeding. *Bristol-Myers v. F.T.C.* (D.C.C.1970) 424 F.2d 935, *cert. denied* 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52. The (b)(7) exemption is thus inapplicable.

### C. *Subsection (a)(2)(C)*

Section (a)(2) of the FOIA provides in part that:

"Each agency, in accordance with published rules, shall make available for public inspection and copying—

. . . (C) administrative staff manuals and instructions to staff that affect a member of the public . . ."

■ The agency persuasively contends that "Raids and Searches" is a "law enforcement manual" rather than an "administrative staff manual" and as such is not subject to (a)(2)(C) disclosure. This distinction finds ample support in the legislative history. The word "administrative" was not included in the original text of the Senate bill, but was added to limit (a)(2)(C) disclosure to those staff manuals and instructions dealing with "administrative . . . rather than law enforcement mat-

ters . . ." S. Rpt. No. 813, 89th Cong., 1st Sess. (1965). The line between the two may be difficult to draw in some cases, see *Hawkes v. Internal Revenue Service, supra, Lord & Taylor v. U. S. Dept. of Labor* (S.D.N.Y. August 27, 1977), 75 Civ. 2839, but it is clear enough here. We find that the withheld portions of "Raids and Searches" are of a law enforcement rather than an administrative nature and thus are not subject to (a)(2) disclosure.

■ The question remains whether subsection (a)(3)'s disclosure channel remains open if the (a)(2) route is closed, as we find it to be.[4] The agency contends that it does not. It argues that staff manuals not disclosable under (a)(2)(C) because they are law enforcement manuals are, as such, exempt from (a)(3) disclosure as well, regardless of whether any of the nine exemptions in subsection (b) applies. The agency reads the legislative history of (a)(2) as in effect creating exemptions in addition to those enumerated in subsection (b). This interpretation raises particularly subtle—and unresolved—problems of interpretation of the FOIA. See generally Davis, *Administrative Law in the Seventies* (1976), Supplementing *Administrative Law Treatise* 53–57. For the reasons that follow, we decline to adopt the agency's interpretation and hold that the inapplicability of subsection (a)(2) does not foreclose the possibility of relief under (a)(3).

4. The Act, as structured, provides for three enumerated categories or methods of making information available to the public. The first, (a)(1), requires certain matter to be published in the Federal Register; the second, (a)(2), requires certain matter to be made available for public inspection and copying; the third, (a)(3), requires certain matter to be made available upon request to an agency. These sections appear to be alternate disclosure channels. While material "made available" under either of the first two routes is not to be furnished under the third, there is no indication from the language or structure of the Act that the non-applicability of either (a)(1) or (a)(2) was meant to foreclose the possibility of disclosure under (a)(3). The third category appears to be a broad, catch-all provision for disclosure of material that may not fall under either of the other two categories.

The Act in (a)(2) provides that "Each agency, in accordance with published rules, shall make available for public inspection and copying" specified items, including "final opinions," "statements of policy and interpretations which have been adopted by the agency," and "administrative staff manuals and instructions to staff that affect a member of the public."

The Act provides in (a)(3): "Except with respect to the records made available under paragraphs (1) and (2) of this subsection [subsection (a)], each agency, upon any request for records which (A) reasonably describe such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person."

We have found only two cases that have confronted the problem. In *Tax Analysts and Advocates v. Internal Revenue Service* (D.D.C.1973) 362 F.Supp. 1298, *aff'd* insofar as here relevant (1974) 164 U.S.App.D.C. 243, 505 F.2d 350, plaintiff sought to compel disclosure under (a)(2)(B) of IRS "letter rulings" and technical advice memoranda.[5] The Court declared that even if letter rulings were not subject to disclosure under (a)(2)(B), they could still be disclosed under (a)(3) since they were "undoubtedly 'records' within subsection (a)(3) of the Act and therefore subject to mandatory disclosure if no specific exemption is available." *Tax Analysts, supra* at 1306.

*City of Concord v. Ambrose* (N.D.Cal. 1971) 333 F.Supp. 958 reached the opposite conclusion. In that case, plaintiff sought disclosure of texts used by the Bureau of Customs to train its agents in surveillance techniques. After finding the requested documents to be law enforcement manuals and, as such, not subject to (a)(2)(C) disclosure as "administrative staff manuals", the court went on to hold that this finding precluded (a)(3) disclosure, regardless of the applicability of any subsection (b) exemption. The court found no conclusive legislative history on the interrelation of (a)(2) and (a)(3), but considered the two subsections to create mutually exclusive categories distinguished by "varying provisions and conditions" for availability. *City of Concord, supra* at 960.

We are not persuaded by the court's reasoning in *City of Concord.* The only "varying provisions" specifically discussed in that case were a provision for publication of a fee schedule, contained in (a)(2) and absent in (a)(3), and a provision for deletion of identifying details, which is part of (a)(2) but not (a)(3). We do not find these differences, to the extent that they are not eliminated by other sections of the Act, to be of substantial significance. We note that the Act contains a subsection, (a)(4)(A), that deals comprehensively and exclusively with fees and is applicable to both (a)(2) and (a)(3).[6] We also note that subsections (b)(6), (b)(7)(C) and (b)(7)(D), applicable to both (a)(2) and (a)(3), exempt from mandatory disclosure various kinds of identifying details.[7] Professor Davis has found "nothing in the Act that makes the system of availability of (a)(2) items different in any way from availability of (a)(3) items."[8]

More significant is the language of subsection (c) of the Act, which provides in pertinent part that:

"This section [the FOIA] does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section."

---

**5.** Subsection (a)(2)(B) provides for disclosure of "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register . . . ."

**6.** Subsection (a)(4)(A) provides:

"(4)(A) In order to carry out the provisions of this section, each agency shall promulgate regulations, pursuant to notice and receipt of public comment, specifying a uniform schedule of fees applicable to all constituent units of such agency. Such fees shall be limited to reasonable standard charges for document search and duplication and provide for recovery of only the direct costs of such search and duplication. Documents shall be furnished without charge or at a reduced charge where the agency determines that waiver or reduction of the fee is in the public interest because furnishing the information can be considered as primarily benefiting the general public."

**7.** Subsection (b)(6) exempts

"(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

Subsections (b)(7)(C) and (b)(7)(D) exempt

"(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source."

**8.** Davis, Administrative Law in the Seventies, *supra* at 55.

The Senate Committee reported that the purpose of subsection (c) is to

"make it clear beyond doubt that all *materials* of the Government are to be made available to the public . . . unless specifically allowed to be kept secret by one of the exemptions in subsection [(b)]." S. Rep. No. 813, p. 10.

The House report is virtually identical.

The cases similarly confine the Act's exemptions to those specifically stated. See e. g. *EPA v. Mink* (1973) 410 U.S. 73, 79, 93 S.Ct. 827, 35 L.Ed.2d 119; *Rose v. Dept. of Air Force, supra* 495 F.2d at 263-264; *Vaughn v. Rosen* (1973) 157 U.S.App.D.C. 340, 343, 484 F.2d 820, 823, *cert. denied* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); *Getman v. N.L.R.B.* (1971) 146 U.S. App.D.C. 209, 211, 450 F.2d 670, 672, stay denied 404 U.S. 1204, 92 S.Ct. 7, 30 L.Ed.2d 8.

In light of the clear statutory language, the quoted legislative history, and the judicial interpretations of the Act, we are constrained to reject the agency's theory that subsection (a)(2)(C)'s legislative history creates a restriction on disclosure beyond the nine exemptions enumerated in subsection (b). Although disclosure of some sections could jeopardize successful enforcement and agents' safety we can find no statutory language exempting the withheld portions of this pamphlet.

## II. *Equitable Discretion to Refuse Enforcement*

Neither party has raised the issue of whether we have discretion, as a court of equity, to refuse to order release under the Act. Nonetheless, we find that issue crucial in the case before us. The Court of Appeals for this Circuit recognized in *Rose* that the circuits were in apparent conflict on the issue, compare *Benson v. General Services Administration* (9th Cir. 1969) 415 F.2d 878, 880-881 with *Soucie v. David* (1971) 145 U.S.App.D.C. 144, 146-147, 448 F.2d 1067, 1076-1077; also see other cases collected in *Rose, supra* 495 F.2d at 269 n.23. It posited, however, that this conflict might be more apparent than real "since even the courts that are cited as opposing the notion of general equity power to refuse disclosure recognize that a truly exception case might require it." *Rose, supra* 495 F.2d at 269. See *Soucie, supra,* 145 U.S.App.D.C. at 147, 448 F.2d at 1077; *Tennessean Newspaper, Inc. v. Federal Housing Administration* (6th Cir. 1972) 464 F.2d 657, 662.

The Act itself, as Professor Davis has noted, contains no mandatory provision for judicial enforcement. Davis, *Admnistrative Law Treatise* 1970 Supplement at 123. Instead it provides in subsection (a)(4)(B) that "[o]n complaint, the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any records improperly withheld . . . ." This subsection confers on courts the jurisdiction to enforce the Act; it does not purport to deprive them of the equity discretion to decline to issue an injunction enforcing it. The Supreme Court has recognized that courts retain such discretion even when applying a statute which provides that injunctive relief "shall be granted." *Hecht Co. v. Bowles* (1944) 321 U.S. 321, 329-330, 64 S.Ct. 587, 88 L.Ed.2d 754. It is a "truism that Congress knows how to deprive a court of broad equitable power when it chooses so to do." *Renegotiation Board v. Bannercraft Co.* (1974) 415 U.S. 1, 19, 94 S.Ct. 1028, 1038, 39 L.Ed.2d 123. Since the Chancellor's discretion has long been regarded as the bedrock of equity jurisidiction, it hardly seems likely that a draftsmen of a statute designed to eliminate such discretion would have used the words "shall have jurisdiction" to achieve this purpose.[9]

Congress' concern, in exempting "investigative techniques" from mandatory disclosure if contained in an "investigatory record", provides guidance for the exercise of

---

9. This is not to gainsay that courts, in exercising equitable discretion, should proceed hesitantly in light of the purposes of the Act.

discretion here.[10] Although subsection (b)(7) does not exempt the materials at issue, it remains relevant "insofar as it indicates Congressional sensitivity to the problems attendant on disclosure of investigatory strategy." *Ginsberg, supra* at 3. We agree with the district court in *Ginsberg* that it is "illogic[al] [to protect] enforcement strategy contained in investigatory files while leaving unprotected the same information contained in other documents." *Id.* at 3.

On the facts of this case, where disclosure of some sections could enable violators to escape detection or endanger government agents, we believe that exceptional circumstances are present and the public interest implicated so as to warrant an exercise of discretion to decline enforcement with respect to such sections.[11] Accordingly we hold that the agency must release the withheld portions of "Raids and Searches", except those portions we find "would significantly impede the [law] enforcement process" or endanger agents if disclosed. Cf. *Hawkes, supra* 467 F.2d at 795.

An appendix specifying those passages that must be disclosed accompanies this memorandum [omitted from published opinion]. Execution of any order that we may enter will be stayed pending appeal. The agency is directed to submit a proposed order within ten days.

SO ORDERED.

**10.** We note that Congress, in enacting the (b)(7) exemption, was not concerned with protecting from disclosure "routine techniques and procedures already well-known to the public, such as ballistics tests, fingerprinting, and other scientific tests or commonly known techniques." Conference Rpt. No. 93–1200, 93d Cong., 2d Sess., 3 U.S.Code Cong. and Admin. News p. 6291 (1974).

**11.** Some withheld sections describe enforcement techniques that are of dubious legality under the Fourth Amendment. Plaintiff contends that these sections cannot be protected under a "law enforcement" exemption since constitutionally proscribed methods are themselves "law violation." In the context of equity considerations, this argument translates into a claim that the agency's "unclean hands" should

deprive it of any benefits of our exercise of equitable discretion, at least as to those sections prescribing unconstitutional techniques. We are not inclined, however, to rule in the abstract on the constitutionality of the techniques presented in "Raids and Searches," since we feel that such complex issues can be better adjudicated if and when they arise in the context of specific cases. *United Public Workers v. Mitchell* (1947) 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754. Although we do not decide whether any techniques described are indeed unconstitutional, we do note our grave doubts with respect to some of them. The agency might do well to revise its enforcement guidelines with a heightened sensitivity to developments in interpretation of the Fourth Amendment.