**TENNESSEAN NEWSPAPERS, INC.,**
**Plaintiff-Appellant,**

v.

**FEDERAL HOUSING ADMINISTRA-**
**TION et al., Defendants-Appellees.**

No. 71-1676.

United States Court of Appeals,
Sixth Circuit.

May 4, 1972.

Alfred H. Knight, III, Nashville, Tenn., for plaintiff-appellant; William R. Willis, Jr., Willis, Knight & Barr, Nashville, Tenn., on brief.

Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., for defendants-appellees; L. Patrick Gray, III, Asst. Atty. Gen., Morton Hollander, Attys., Dept. of Justice, Washington, D. C., Charles H. Anderson, U. S. Atty., Nashville, Tenn., on brief.

Before EDWARDS and MILLER, Circuit Judges, and WILSON,* Chief District Judge.

EDWARDS, Circuit Judge.

This case presents the first instance in which this court has had to deal with the Freedom of Information Act, 5 U.S.C. § 552 (1970).

The Committee Report in the House of Representatives sheds this light on the old act and on the background of the legislation we construe:

"Section 3 of the Administrative Procedure Act (5 U.S.C. 1002), though titled 'Public Information' and clearly intended for that purpose, has been used as an authority for withholding, rather than disclosing, information. Such a 180° turn was easy to accomplish *given the broad language* of 5 U.S.C. 1002." H.R.Rep.No. 1497, 89th Cong. 2d Sess. 10 (1966), U.S.

Code Cong. & Admin.News 1966, pp. 2418, 2421. (Emphasis added.)

It also states the Congressional purpose for the new act:

A democratic society requires an informed, intelligent electorate, and the intelligence of the electorate varies as the quantity and quality of its information varies. A danger signal to our democratic society in the United States is the fact that such a political truism needs repeating. And repeated it is, in textbooks and classrooms, in newspapers and broadcasts.

The repetition is necessary because the ideas of our democratic society have outpaced the machinery which makes that society work. The needs of the electorate have outpaced the laws which guarantee public access to the facts in Government. In the time it takes for one generation to grow up and prepare to join the councils of Government—from 1946 to 1966—*the law which was designed to provide public information about Government activities has become the Government's major shield of secrecy.*

*S. 1160 will correct this situation. It provides the necessary machinery to assure the availability of Government information necessary to an informed electorate.* (Emphasis added.)

The facts which give rise to this litigation are not complicated. The case arises out of the interest the Nashville Tennessean took in publicizing the problems of a blind man, one Hugh James, who bought a house in Nashville under a financing scheme which involved FHA insurance of the mortgage. The FHA had valued the house through an appraisal at $10,850. Subsequently James discovered various defects in the house which made such an evaluation dubious. Independent appraisals appraised the value at $3,750 to $4,500. James tried to get a copy of the original appraisal and FHA refused to release it. There-

---

* Honorable Frank W. Wilson, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

upon the Nashville Tennessean ran a series of articles which criticized the FHA and various of its officials for their handling of the case.

Ultimately FHA gave James an illegible copy of the appraisal. The Tennessean then filed suit under the terms of the Freedom of Information Act cited above in the United States District Court for the Middle District of Tennessee. During the hearing before the District Judge, the FHA changed its position somewhat. It made legible copies of the appraisal available, but the name of the appraiser was deleted.

At the conclusion of the hearing the District Judge entered an order requiring FHA to make the appraisal available under the terms of the Act, but holding on equitable grounds that FHA did not need to make the name of the appraiser available. The District Judge did not state what the equitable grounds were. Of course, the District Judge may have been motivated by a laudable desire to protect the privacy of a relatively small employee against the publicity wrath of a great newspaper. Unfortunately, however, this is by no means the only issue which could be hypothesized.

Whether the actual issue in this case may ultimately prove to be great or small, this appeal involves an interpretation of a new federal statute which has far reaching impact upon the future of government and public information about government.

Each party to this litigation finds something in the statute to rely on. The Tennessean relies upon § 552(c) as mandating disclosure:

"(c) This section does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section. This section is not authority to withhold information from Congress." 5 U.S.C. § 552(c) (1970).

FHA relies upon § 552(a) (3) as conveying de novo hearing rights upon the District Court and, hence, allowing it to employ equitable considerations in its grant or denial of disclosure:

"(3) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, on request for identifiable records made in accordance with published rules stating the time, place, fees to the extent authorized by statute, and procedure to be followed, shall make the records promptly available to any person. On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo and the burden is on the agency to sustain its action. 5 U.S.C. § 552(a) (3) (1970).

Of the nine exceptions to the statutory disclosure requirement, the most important for purposes of this appeal appears to be Title 5, § 552(b) (5), which in applicable part says as follows:

"(b) This section does not apply to matters that are—

\*    \*    \*    \*    \*    \*

"(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;" 5 U.S.C. § 552(b) (5) (1970).

The Tennessean also relies upon the following decided cases: NLRB v. Getman, 404 U.S. 1204, 92 S.Ct. 7, 30 L.Ed. 2d 8 (1971); New York Times v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); General Services Administration v. Benson, 415 F.2d 878 (9th Cir. 1969). The FHA relies upon the following decided cases for a contrary result: International Paper Co. v. Federal Power Commission, 438 F.2d 1349 (2d Cir. 1971), cert. denied, 404 U.S. 827, 92 S.Ct. 61, 30 L.Ed.2d 56

(1972); Sears, Roebuck & Co. v. NLRB, 433 F.2d 210 (6th Cir. 1970); Ackerly v. Ley, 137 U.S.App.D.C. 133, 420 F.2d 1336 (1969).

None of these, except *Benson*, appears to be directly in point. There the Ninth Circuit did hold that a General Services Administration appraisal had to be disclosed.

> [T]o determine if the requirements of the fifth exemption are met, the court must inquire whether the records sought are inter- or intra-agency memoranda or letters which would not be available to any party in any litigation in which the agency having the records might be involved. And the standards for decision are the discovery practices, as regulated by the courts. "The law" is to determine what is available. Cf. Davis v. Braswell Motor Freight Lines, Inc., 363 F.2d 600, 603 (5th Cir. 1966).
>
> We hold that Federal Rule of Civil Procedure 26(b) is sufficiently broad to entitle discovery of the records in dispute, especially insofar as they are factual material rather than documents which comprise the administrative reasoning process of government. General Services Administration v. Benson, *supra*, 415 F.2d at 880.

We agree with the Ninth Circuit's result in the *Benson* case and with the rationale we have just quoted from it.[1]

In the fifth exception (quoted above) Congress undertook to protect the decision making processes of government agencies. Government policy makers (at whatever level) when assigned to mutual consultation and full debate on a decision should not be limited in thought or expression to just those preliminary views which they were prepared to defend in the public prints. Many a quick comment—which in itself reveals lack of full consideration and thought—nonetheless may shed continuing and useful illu-

mination on the problem at hand. No one needs to remind the courts of the value of advocacy, confrontation and debate. These are the recognized tools of the judicial fact finding process and they are frequently involved in judicial decision making too. We would not fail to protect their availability to another branch of government.

The document in dispute here, however, has no such characteristic. It is (at least presumably) the finished work product of a professional.

An appraisal is defined as "a valuation of property by the estimate of an authorized person." Webster's New International Dictionary (3d ed. 1961).

█ The appraisal in this case is an analysis of facts involving a professional opinion. The name of the author is a relevant and necessary part of that opinion. One of the reasons for the First Amendment, as well as the Freedom of Information Act, is to promote honesty of government by seeing to it that public business functions under the hard light of full public scrutiny. We imply nothing in relation to the facts of this case when we note that problems among personnel of the exact category here involved are not unknown. The very name of an appraiser could be sufficient to establish a motivation sufficient to trigger an investigation. And, in any event, an old adage gained modern vitality when President Truman remarked, "If you can't stand the heat, stay out of the kitchen." J. Bartlett, Familiar Quotations (14th ed. 983a, 1968).

█ We do not think that FHA complied with the Freedom of Information Act when it released the appraisal without the name of its author. FHA contends, however, that its disclosure of the content of the appraisal was voluntary and that it did not waive its legal right to object to disclosure of any part of it, including the name of the author by its

---

1. We recognize, of course, that the Ninth Circuit was affirming a District Court order requiring full disclosure of the appraisal there dealt with, while in our case the District Judge entered a limited disclosure order omitting the appraiser's name.

failure to appeal the District Judge's order of partial disclosure.

Without regard to any procedural niceties, we hold that the District Judge was correct in ordering disclosure of the appraisal and that his order should have included the name of the appraiser. As we see the matter, this document was squarely within the disclosure purpose of the Act in question and it is not within any of the nine exceptions which Congress recognized.

■ As we view the Act in question, the basic Congressional intention was to require disclosure, absent the applicability of one of the specific exemptions. The provision for de novo review still requires the District Court to review under the terms of the Act. It conveys no discretionary power to vary the standards established in the law itself.

In a case wherein a stay of a District Court disclosure order was sought from him as a Circuit Justice, Mr. Justice Black said:

The Board was created by Congress and Congress has seen fit to make identifiable records of the Board and other government agencies available to any person upon proper request. I find no exception in the Freedom of Information Act which would authorize the board to refuse promptly to turn over the requested records. NLRB v. Getman, 404 U.S. 1204, 92 S.Ct. 7, 30 L.Ed.2d 8 (1971).

However final this language appears, it is to date the expressed view of only one member of the United States Supreme Court. And apparently Justice Black had no occasion in that case to discuss the two most difficult issues potentially involved in an information disclosure—executive privilege and judicial discretion.

In *Getman, supra,* there was apparently no challenge to disclosure based on a claim of executive privilege. Nor does this case require us to consider the constitutional problems posed by such a claim, since no privilege was claimed here either.

But in this case the government bases much of its argument on the fact that Congress provided for de novo review by the District Court and for injunctive relief where the court determined the facts to justify it. Both features, according to the government's argument, imply the use of traditional equity powers and hence judicial discretion. And in this case (as distinguished from *Benson,* where the Ninth Circuit affirmed a District Court order) the District Judge employed those powers to withhold the appraiser's name.

■ We have already noted that we believe that the grant of de novo review powers to the District Court gave it full authority to review under the terms of the Freedom of Information Act—the same basis for decision possessed by the agency. But we do not agree that the District Court had the right to disregard the purposes and limitations of that Act any more than did the agency.

■ In this case, however, the government, which is usually quite reluctant to concede judicial power over the executive branch, strongly suggests that the statutory employment of injunctive relief automatically calls into being all of the considerations of general equity jurisdiction.[2] Such a view, carried to its logical conclusion, would allow the District Court to review a petition for disclosure totally independent of the Freedom of Information Act and its purposes and standards.

■ In the context of this case, we reject this thesis. It is, of course, familiar law that Congress can authorize or mandate injunctive relief without surrendering all control over legislative standards because of the equity jurisdiction of the court. United Steelworkers of America v. United States, 361 U.S. 39, 55–59, 80 S.Ct. 1, 4 L.Ed.2d 12 (1959). *See also*

---

2. *See* Consumers Union of United States, Inc. v. Veterans Administration, 301 F. Supp. 796, 806–808 (S.D.N.Y.1969), and Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 767, 787 (1967).

Virginian Ry. v. System Fed'n No. 40, 300 U.S. 515, 552–553, 57 S.Ct. 592, 81 L.Ed. 789 (1937).

The D.C. Circuit concluded its discussion of this issue as follows:

> Through the general disclosure requirement and specific exemptions, the Act thus strikes a balance among factors which would ordinarily be deemed relevant to the exercise of equitable discretion, i. e., the public interest in freedom of information and countervailing public and private interests in secrecy. Since judicial use of traditional equitable principles to prevent disclosure would upset this legislative resolution of conflicting interests,. we are persuaded that Congress did not intend to confer on district courts a general power to deny relief on equitable grounds apart from the exemptions in the Act itself. There may be exceptional circumstances in which a court could fairly conclude that Congress intended to leave room for the operation of limited judicial discretion, but no such circumstance appears in the present record of this case. Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1077 (1971). (Footnote omitted.)

Like the D.C. Circuit, we believe that Congress clearly intended to and did set the standards for withholding or disclosing information for both the agencies and the courts. This case does not afford any special circumstances which can properly be argued as overriding the statutory mandates.

The judgment of the District Court is affirmed in part and reversed in part, and the case is remanded to the District Court for further proceedings in accordance with this opinion.

WILLIAM E. MILLER, Circuit Judge (concurring in the result).

This is not the occasion, in my view, for broad generalizations concerning the purposes, nature and scope of the Freedom of Information Act. As pointed out by the District Judge in his memorandum opinion "at an initial hearing on the plaintiff's motion for a preliminary injunction, the FHA volunteered in open court to furnish the plaintiff a copy of the appraisal report, but to delete therefrom the name of the appraiser." Since FHA thus acquiesced in supplying the contents of the document, the only real issue before him was whether under the Freedom of Information Act it should be required to disclose the identity of the appraiser. On this issue the District Court stated: "However, since no possible purpose would be served by releasing the identity of the appraiser and based on equitable considerations, the court decrees that the identity of the appraiser be withheld." Judge Edwards, as well as the parties, appear to agree that we are concerned on this appeal solely with the applicability of exception five of the Act, (5 U.S.C. § 552(b) (5), the text of which is quoted in Judge Edwards' opinion. The key to a proper construction of this exception is supplied in the opinion of the Ninth Circuit in General Services Administration v. Benson, 415 F.2d 878 (1969). Construing the fifth exception, the Court in *Benson* stated that the applicable test is whether the documents would be available on discovery in any litigation in which the agency having the records might be involved. As there pointed out, "the standards for decision are the discovery practices, as regulated by the courts."

F.R.Civ.P. 26(b) provides that parties may obtain discovery regarding any material not privileged which is relevant to the subject matter of the litigation, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable material. F.R.C.P. 26(b) (1). Thus, applying the *Benson* criterion, it is clear to me that FHA, having offered the contents of the document itself, was also required to disclose the identity of the person who prepared it.

Specifically I do not find that we are required in this case to determine

whether the appraisal report would qualify for the fifth exception if no proffer at all had been made by FHA. Nor to dispose of this appeal do I find it necessary to decide whether a court may not in some situations under the Freedom of Information Act apply general equitable principles. A strong argument can be made that courts do possess equitable powers under the Act. If the federal discovery rules in civil cases constitute the guide to the parameters of the fifth exception, it is significant that F.R.C.P. 26(c), governing all discovery procedures, vest in the courts extremely broad power to enter "protective orders" to accomplish the ends of justice in given cases—a provision which strongly suggests the traditional balancing tests of equitable jurisdiction. Moreover, the Freedom of Information Act itself invokes the traditional injunctive power of equity as the enforcement mechanism. Finally, the *Benson* court, relied upon in Judge Edwards' opinion, although adopting the discovery rules as the test for the fifth exception, specifically held that the Freedom of Information Act confers equity jurisdiction on the courts:

> In exercising the equity jurisdiction conferred by the Freedom of Information Act, the court must weigh the effects of disclosure and nondisclosure, according to traditional equity principles, and determine the best course to follow in the given circumstances. The effect on the public is the primary consideration.

Although the District Judge apparently felt that equitable considerations required a withholding of the appraiser's name, it is my opinion that the exact opposite is true. It is, of course, possible to conceive of some governmental operations which may require the nondisclosure of the identities of persons performing public functions. These instances, however, in a democratic society, must necessarily constitute rare exceptions. Generally, anonymity is not the privilege of individuals charged with the responsibility of transacting the business of government. The suggestion

in this case by FHA that exposure to possible publicity might cause FHA employees to be overly-cautious in making appraisals, if approved as an excuse for non-disclosure, could set a precedent fraught with dangerous implications in connection with the activities of other governmental officials and agencies. It can hardly be said to rise to the dignity of an equitable reason for nondisclosure.

That knowledge on the part of the public of the names and activities of public officials may influence their conduct is precisely the reason that we have deemed the possibility of public exposure to be so important.

Therefore, as equitable considerations are lacking in this case to support FHA's position, I feel that it is unnecessary as stated above, to decide whether situations may not arise which would warrant the courts under the Freedom of Information Act to apply such considerations.

For the separate reasons stated herein, I concur in the ultimate result indicated in Judge Edwards' opinion.