**FREUHAUF CORPORATION et al.,**
**Plaintiffs-Appellees,**

**v.**

**INTERNAL REVENUE SERVICE,**
**Defendant-Appellant.**

**No. 74–1474.**

United States Court of Appeals,
Sixth Circuit.

June 9, 1975.

Scott P. Crampton, Meyer Rothwacks, Richard Mitchell, Bennet, Hollander, Civ. Tax Div., Jane M. Edmisten, Dept. of Justice, Washington, D. C., Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., for appellant.

John L. King, Matthew C. McKinnon, Berry, Moorman, King, Lott & Cook, Detroit, Mich., William A. Barnett, Chicago, Ill., Milton Mehl, Fort Worth, Tex., Gerald C. Risner, Chicago, Ill., for appellee.

Before MILLER, LIVELY and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

In this action brought by plaintiffs under the Freedom of Information Act, 5 U.S.C. § 552 (F.O.I.A.), the Internal Revenue Service appeals from an order of the district court requiring that agency to make available for inspection and copying a large number of documents in the possession of the Excise Tax Branch of the Miscellaneous and Special Provisions Tax Division of the Office of Assistant Commissioner (Technical). The documents ordered to be produced consist primarily of unpublished private and letter rulings relating to the manufacturers excise tax as imposed upon sales of trucks and trailers, but also include the files underlying twenty-three published Revenue Rulings, communications between the Service and persons outside the Executive Branch, and indices and card files relating to the foregoing. The complete list of documents is described in the court's order, which is attached hereto as Appendix A.

The information sought does not pertain to the federal income tax, but is confined to interpretations of the manufacturers excise tax under Section 4061(a) of the Internal Revenue Code, 26 U.S.C. § 4061(a), and the definition of the price for which an article is sold as set forth in Section 4216.

The order appealed from specifically provides that the described documents shall be made available intact and without deletion,

"except for those items which, . . defendant submits to the court . . sealed and intact, without deletion but with any proposed deletions indicated, for in camera review by the court . . . ., as to whether the proposed deletions are justified under the Freedom of Information Act together with a detailed written explanation of the justification for each deletion . . ."

The government opposed disclosure below, claiming that the documents requested were exempt under one of the

nine exemptions to the Act, § 552(b)(3), which provides that the Act is not applicable to matters "specifically exempted from disclosure by statute". The Service urges that, as described in the district court's order, the documents are exempt under the Internal Revenue Code, 26 U.S.C. §§ 6103, 7213. Section 6103 provides in part, that

". . . All returns made with respect to the taxes imposed by chapters 1, 2, 3, 5, 6, 11, 12, and 32, subchapters B and C of chapter 33, and subchapter B of chapter 37, and chapter 41, shall constitute public records and shall be open to public examination and inspection to such extent as shall be authorized in rules and regulations promulgated by the President." 26 U.S.C. § 6103(a)(2).

Section 7213 provides for criminal penalties for disclosure by government employees of certain information, including income returns, sources of income and profits.[1]

The government further asserts that the district court had and should have exercised equitable discretion to withhold the relief even if it were otherwise called for under the Act.

■ We reject both of these contentions and affirm the judgment of the district court. We hold that while the district court erred in construing 26 U.S.C. § 6103 as extending the protection of privacy to persons filing income tax returns only, its order for disclosure was nonetheless proper when construed to reserve in the court the right, upon *in camera* inspection, to deny disclosure of any specific documents in which the deletion of protected matter will not suffice to preserve any exemption which may be validly asserted with respect thereto.

■ We also reject the appellants' argument that "even assuming, *arguendo*, that the documents in issue are not specifically exempt from disclosure by statute, . . . the district court erred in failing to exercise its equitable jurisdiction to decline to issue an order compelling disclosure".

It is important to understand at the outset what this appeal does not involve. First, no issue is raised that the documents sought, as numerous as they may be, are not "identifiable records" within the meaning of § 552(a)(3). Second, no constitutional question is presented. Third, no claim is made that *in camera* inspection by the trial court to sift out privileged matter is forbidden, as is classified matter under subsection (b)(1) of the Act, *EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1969).

---

1. 26 U.S.C. § 7213. Unauthorized disclosure of information. Subsection (a)(1) provides:

(a) **Income returns.—**
(1) **Federal employees and other persons.** —It shall be unlawful for any officer or employee of the United States to divulge or to make known in any manner whatever not provided by law to any person the amount or source of income, profits, losses, expenditures, or any particular thereof, set forth or disclosed in any income return, or to permit any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; and it shall be unlawful for any person to print or publish in any manner whatever not provided by law any income return, or any part thereof or source of income, profits, losses, or expenditures appearing in any income return; and any person committing an offense against the foregoing provision shall be guilty of a misdemeanor and, upon convic-

tion thereof, shall be fined not more than $1,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution; and if the offender be an officer or employee of the United States he shall be dismissed from office or discharged from employment.
Subsection (b) provides:
(b) **Disclosure of operations of manufacturer or producer.—**Any officer or employee of the United States who divulges or makes known in any manner whatever not provided by law to any person the operations, style of work, or apparatus of any manufacturer or producer visited by him in the discharge of his official duties shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution; and the offender shall be dismissed from office or discharged from employment.

Finally, while the Act lists nine exemptions to which its provisions shall not apply, the Internal Revenue Service relies only upon that contained in subsection (b)(3), matters "specifically exempted from disclosure by statute".

■ As the Supreme Court pointed out in *EPA v. Mink, supra,* the F.O.I.A. was enacted in response to the shortcomings of its predecessor, Section 3, which "was generally recognized as falling far short of its disclosure goals and came to be looked upon more as a withholding statute than a disclosure statute". 410 U.S. at 79, 93 S.Ct. at 832. While the Act may have its imperfections in drafting,[2] the intent of the Congress that issues of construction be resolved in favor of public disclosure is unmistakable, and our circuit as well as others, has consistently recognized this. *Tennessean Newspapers, Inc. v. Federal Housing Administration,* 464 F.2d 657 (6th Cir. 1972); *Hawkes v. I.R.S.,* 467 F.2d 787 (6th Cir. 1972); *Soucie v. David,* 145 U.S. App.D.C. 144, 448 F.2d 1067 (1971).

The Act places upon the agency the burden to impose specific objections to disclosure, and to show that nondisclosure is permitted under one of the nine specifically enumerated exemptions. *EPA v. Mink, supra,* 410 U.S., at 79, 93 S.Ct. 827, 35 L.Ed.2d 119. The policy of the Act favors disclosure and thus mandates that the exemptions be construed narrowly. *Soucie v. David,* 145 U.S.App. D.C. 144, 448 F.2d 1067 (1971).

■ The government contends that the letter rulings and other materials sought constitute "returns" within the meaning of 26 U.S.C. § 6103, or are exempt as privileged material under 26 U.S.C. § 7213. It asserts that certain of the documents may be attached to an excise tax return or may involve information contained in a tax return, and

claims broadly that it was the "obvious intent of Congress to restrict access to all documents associated with the administration of the tax laws".

While an injunction has been issued and stayed pending appeal, neither the trial court nor this court has had the opportunity to examine the precise documents desired to determine whether they are subject to disclosure. We thus find ourselves in much the same position as we did in *Hawkes v. Internal Revenue Service,* 467 F.2d 787 (6th Cir. 1972). In that case disclosure of certain portions of an Internal Revenue Manual by a taxpayer indicted for tax fraud was opposed on the assertion that disclosure was excluded under 5 U.S.C. § 552(b)(2), excluding matters "related solely to the internal personnel rules and practices of an agency". As Judge Celebrezze there observed:

"Neither this Court nor the District Court has examined the Manual portions sought. It is therefore impossible for us to state authoritatively which portions are subject to compulsory disclosure, although it would appear that several sections at least of the Manual would provide guidance as to the Service's understanding of substantive law and relevant procedures and would therefore be subject to disclosure under (a)(2)(C). *In camera* [italics in quoted text] inspection of the Manual would provide a basis for application of the guidelines for disclosure suggested in this opinion and a remand for such inspection and evaluation seems reasonable." *Hawkes v. I.R.S., supra,* at p. 796.[3]

Formulated on the guidance of *Hawkes, supra,* the district court injunction permits submission to the court for *in camera* inspection of any documents in which the Service believes deletions are justified.

---

**2.** This is the position taken by Professor Kenneth Davis. See Davis, Administrative Law Treatise (1970 Supplement) at 115.

**3.** *Hawkes* was remanded to the district court for *in camera* examination. Following such examination the district court concluded the materials were subject to disclosure and ordered the materials made available to plaintiff. This court affirmed that decision in *Hawkes v. I.R.S.,* 507 F.2d 481 (decided and filed December 23, 1974).

The position of the Service is broad rather than specific, perhaps in part because the order itself deals more in categories than in specifically identified documents. For this reason we conceive our role at this stage to be limited largely to determining whether the types of documents described are so clearly within the exemption of 26 U.S.C. §§ 6103 and 7213 that the injunctive order appealed from must be reversed and the suit under the Act dismissed. We determine that the Service has not maintained its burden of showing, at this stage, that the material requested is within the specific exemptions of the statutes relied upon so as to make reversal necessary.

The nature of certain of the documents sought, however, is known and can be ruled upon on a categorical basis. Letter rulings, as such, have a rather well defined meaning. The Secretary of the Treasury has defined a letter ruling as:

> "A written statement issued to a taxpayer or his authorized representative by the national office which interprets and applies the tax laws to a specific set of facts." Treas.Reg. § 601.-201(a)(2).

See also *Tax Analysts and Advocates v. I.R.S.,* U.S.App.D.C., 505 F.2d 350, 352 (1974).

■■ We hold that letter rulings are not "returns" within the meaning of 26 U.S.C. § 6103 and hence are not exempt for that reason under § 552(b)(3) of the Act. We are in agreement with the rationale of the District of Columbia Circuit in *Tax Analysts and Advocates v. I.R.S.,* U.S.App.D.C., 505 F.2d 350 (1974), and with that of Professor Davis in his treatise, Davis, *Admin.Law Treatise,* (1970) § 3A.9 at 130. In *Tax Analysts, supra,* the court emphasized that such letter rulings are generated by the agency rather than the taxpayer. It further stated:

> Letter rulings are issued at the request of taxpayers seeking advice as to the tax consequences of specific transactions. This information provides guidance in planning and conducting their business affairs and, if the transaction is consummated, aids in preparation of their tax returns. The fact that taxpayers may elect to follow the Internal Revenue Service's recommendations that letter rulings be attached to returns containing information about the transactions referred to in the letter rulings does not *deprive a letter ruling of its separate status as a "final opinion" and "interpretation" nor does it make the attachment part of a return.* Attachment is to alert the District Director of the Internal Revenue Service that a letter ruling had been issued. The appropriate District Director is always sent a copy at the time a letter ruling is issued to any taxpayer required to file a return in his district. 505 F.2d at 354–355.

We also agree with the court in *Tax Analysts* that letter rulings are not rendered exempt by Treasury Regulation § 301.6103(a)–I(a)(3) (Feb. 8, 1972), which amended the earlier definition of "return" and broadened it. While certain letter rulings may fall within the literal language of that regulation, we agree that the regulations, promulgated here by the regulated agency, "cannot immunize letter rulings from disclosure under the Freedom of Information Act", beyond that which Congress intended to protect under § 6103. 505 F.2d at 354, n. 1.

The District of Columbia Circuit further ruled in Tax Analysts that, under §§ 6103 and 7213 of the Internal Revenue Code, technical advice memoranda written in conjunction with income tax returns were exempt from disclosure under § 552(b)(3). We do not reach that precise question here as the order here most carefully limits disclosure to "those portions of responses to Technical Advice requests that are or were intended for issuance to taxpayers". So limited, and with the retained power in the court to

make necessary deletions, we think such portions do not come within the exemption of § 6103.

In his memorandum opinion, the district judge below observed:

"We consider that none of the nine exceptions has application to the material here sought by plaintiffs and that 26 U.S.C.A. § 6103 provides for the protection of the privacy of persons filing *Income* Tax returns. To the extent that any of the material sought by plaintiffs might constitute an invasion of the privacy of taxpayers there are means that may be employed to avoid such disclosure. In furnishing plaintiffs the information relative to their defense there need be no violation of Section 6103 of Title 26 of the Internal Revenue Code." 369 F.Supp. at p. 110.

The quoted language is troublesome in two respects. First, we agree that probably none of the exceptions is applicable to the extent at least that it bars disclosure of the requested documents as a class or group. We do not read it as meaning, however, that a given specific document which is finally delivered over for *in camera* inspection may not contain material which is excludable as within one of the exempted categories. Indeed, so much seems to be recognized by the broad language of the order referring to "whether the proposed deletions are justified under the Freedom of Information Act." Second, it is apparent from an examination of the language of § 6103 that the district judge erred at least to the extent of holding that § 6103(a)(2) applies only to income tax returns. It does not, but rather expressly applies as well to taxes imposed under chapter 32, which of course relates to excise taxes. Since, therefore, the possibility remains that the exemption of § 6103 may be found to apply to a specific document which may be delivered over for *in camera* inspection, the district judge will wish to bear this in mind during inspection. This is particularly true with re-

spect to any inspection of files applicable to the issuance of the enumerated Revenue Rulings under Section (2) of the order. The order as entered, however, appears to retain sufficient flexibility to permit this determination to be properly made by the trial court.

■■ A further complaint of the Internal Revenue Service is that the district court's opinion made no mention of its claim that a further exemption from disclosure of the requested documents is created by the provisions of 26 U.S.C. § 7213(a) and (b). The government argues that "while concededly its specific terms do not encompass excise tax returns *per se,* logic dictates the conclusion that it applies to information submitted in connection with such returns."

Section 7213(a) quite expressly refers to *income* returns, both in its heading and repeatedly throughout the body of the text. Unlike Section 6103(a)(2), Section 7213(a) makes no reference to "chapter 32" or otherwise evinces an intent to include *information regarding excise* tax returns within its scope. Contrary to the assertion of the government, logic supports the more restricted meaning, especially since the section imposes criminal penalties. We have been shown no authority to the contrary.[4]

Section 7213(b) is more general in scope than (a) and is not geared to the return of any particular tax. It is directed toward precluding disclosure of certain types of information obtained by officers or employees as a consequence of a visit by such persons to any manufacturer or producer in the discharge of official duties. The order as framed does not reveal that any such type information is contained within the documents affected. However, if upon *in camera* inspection, material covered by § 7213(b) should appear, we believe the order of the district judge retains sufficient flexibility in the court to protect against its disclosure.

---

4. *Tax Analysts and Advocates v. I.R.S., supra,* of course did not involve a dispute as to the applicability of § 7213 to excise taxes. That case involved documents related to income tax only.

## EQUITABLE JURISDICTION ISSUE

The government contends that if the documents in issue are not specifically exempt from disclosure by statute, the district court nonetheless erred in declining to exercise its equitable discretion to refuse disclosure, relying upon certain language in *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 20, 94 S.Ct. 1028, 1038, 39 L.Ed.2d 123 (1974):

> "With the express vesting of equitable jurisdiction in the District Court by § 552(a) there is little to suggest, despite the Act's primary purpose, that Congress sought to limit the inherent powers of an equity court." [5]

The Service also relies upon the comments of Professor Davis in his Administrative Law Treatise:

> "The equity practice is clear and strong. The court that has jurisdiction to enforce the information Act also has jurisdiction to refuse to enforce it whenever equity traditions so require". (1970 Sup.), § 3A.6, at 124.

Many of the arguments proffered by the government in support of its contention that relief should be withheld here are those which have been considered and rejected by Congress. Indeed, the government argues not that the "equities" or facts of this particular case necessitate non-disclosure, but that the categories of documents requested should, for general policy reasons, be exempt. We find these reasons inadequate in light of the clear intent of Congress favoring disclosure.

■ The legislative history to the Act reveals that Congress did not intend general notions such as "public interest" to shield information from the public:

> Section 3 of the Administrative Procedure Act, that section which this bill would amend, is full of loopholes which allow agencies to deny legitimate information to the public. Innumerable times it appears that information is withheld only to cover up embarrassing mistakes or irregularities and the withholding justified by such phrases in section 3 of the Administrative Procedure Act as—'requiring secrecy in the public interest', or 'required for good cause to be held confidential'.
>
> It is the purpose of the present bill to eliminate such phrases, to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language and to provide a court procedure by which citizens and the press may obtain information wrongfully withheld. Senate Rep.No.813, 89th Cong., 1st Sess. at p. 3.

The Internal Revenue Service urges that its letter ruling program will be destroyed if the rulings are disclosed. In addition to the fact that no proof of this appears on the record, this is an argument for the legislature, not the court.

As an alternative to an outright ban on all disclosures, the Service asks "that this court should at a minimum modify the district court order to preserve the confidentiality of documents and correspondence in the Internal Revenue Service's possession" primarily because, it urges, much of the information was submitted in the good faith belief that the documents would be kept confidential. In effect, the Service asks that any ruling which makes such documents generally disclosable should be prospective only, so that administrative procedures may be adopted to protect against unwarranted disclosure of confidential business information submitted by taxpayers and so that in the drafting of its rulings in the future, the Service can delete such confidential commercial and financial data as might otherwise have been incorporated in them.

---

5. The Service relies upon *Renegotiation Board v. Bannercraft*, 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974), as support for its claim that the power to grant equitable relief carries with it the power as well to deny it upon a showing of valid equitable considerations to the contrary. The case, however, involved the issue of whether equitable discretion could be employed to grant additional remedies and not whether the discretion would permit a withholding of relief under the Act.

■ We read this request as simply another way of saying that the plaintiffs should be denied the information they seek.[6] They did not come into court as champions of a cause, but as citizens seeking information to which they claim they were entitled under the Act.

The difficulty with the position of the Service is that it claims altogether too much protection from disclosure and offers altogether too little specific justification. This position is not unlike that rejected by this court in *Tennessean Newspapers v. Federal Housing Administration, supra,* in which Judge Edwards observed that "such a view, carried to its logical conclusion, would allow the District Court to review a petition for disclosure totally independent of the Freedom of Information Act and its purposes and standards."[7] 464 F.2d at 661. While our ruling in that case must necessarily be understood in the context of the practical and equitable considerations set forth in *EPA v. Mink, supra,* we do not conceive that the traditional equitable powers of the district court justify it or us in adding a tenth or eleventh exemption to the nine specifically enumerated in the Act, nor do we conceive that we may postpone the effective date of its operation.[8]

## CONCLUSION

In conclusion, we stress as we did in the first *Hawkes* case, 467 F.2d 787, *supra,* that the merits of any claim of exemption of a particular document are not before us. See also *Renegotiation Board v. Bannercraft Co., supra,* 415 U.S. at 26, 94 S.Ct. 1028, 39 L.Ed.2d 123. Any such claims must yet be decided by the district court upon invocation of the *in camera* inspection provision in its order. We are satisfied that the order as entered contains sufficient flexibility for its implementation to permit the express purposes of the Act to be carried out in a manner consistent with equitable principles and fairness to all involved. In addition to the guidance already available in the decisions of this circuit, we believe the district court will be able to draw upon the practical alternative remedies to an onerous document-by-document *in camera* inspection by the trial judge, as pointed out in *EPA v. Mink, supra,* 410 U.S. at p. 93, 93 S.Ct. 827, 35 L.Ed.2d 119. Imaginative procedures, such as those suggested in *Mink,* should in large measure alleviate the apprehended governmental burden and substantially reduce the 6,000 hours which its affiants estimate to be required to produce and examine the requested documents.

**6.** The record does not contain a judicial finding that requests by taxpayers for letter rulings are in fact made upon the assurance that the rulings will be kept confidential. Indeed, the government admits that a small number of such rulings, after editing, are published each year by the I.R.S. The government does not state whether taxpayer consent is obtained. [Response to Request for Admissions, No. 14].

**7.** In *Tennessean Newspapers v. Federal Housing Administration,* 464 F.2d 657 (6th Cir. 1972), the district court had ordered disclosure of an appraisal, but permitted the withholding of the name of the appraiser. We reversed, holding that in the context of that case, the district court was without power to "vary the standards" established by the Act by permitting non-disclosure "absent the applicability of one of the specific exemptions".

**8.** The Service cites *Evans v. Department of Transportation of the United States,* 446 F.2d 821 (5th Cir. 1971), *cert. denied* 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972), as authority that courts should not permit disclosure of information submitted with the understanding that it would be kept confidential. The difference between *Evans* and the facts here is apparent. *Evans* dealt with a specific document submitted by a confidential informer with the express reservation that his identity would remain confidential. Such information was specifically exempted under 49 U.S.C. § 1504. Further, it was held that the information sought in that case was a part of an investigatory file compiled for law enforcement purposes within the meaning of subsection (b)(7) of the Act. No claim under that subsection has been made in these proceedings to date.

Accordingly, the judgment of the district court is affirmed and the case remanded to the district court for further proceedings.

## APPENDIX A

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

FRUEHAUF CORPORATION,
a Michigan corporation, et al.,

Plaintiffs,

—vs—                                                    Civil No. 4–70345

INTERNAL REVENUE SERVICE,
Defendant.

———————————————————/

## ORDER

January 30, 1974

THORNTON, District Judge.

Upon the considerations expressed in the Court's Opinion entered herein on January 11, 1974 and upon consideration of the entire record herein, it is,

Ordered, that Defendant's Motion for Summary Judgment be and hereby is denied, and it is

Further ordered, that pursuant to 5 U.S.C. 552 and Rule 65(a)(2) of the Federal Rules of Civil Procedure, Defendant, its agents, attorneys and employees are permanently enjoined from withholding the records requested by Plaintiffs and it is,

Further ordered, that commencing from the date upon which Defendant is personally served with a true copy of this Order, and continuing for such reasonably length of time as may be necessary, Defendant shall make available to Plaintiffs for inspection and copying, all of the following records and documents intact and without deletion, except for those items which, within said period of time, Defendant submits to the Court, or to a Special Master, to be appointed by the Court, sealed and intact, without deletion but with any proposed deletions indicated, for in camera review by the Court or his Special Master, as to whether the proposed deletions are justified under the Freedom of Information Act, together with a detailed written explanation of the justification for each deletion:

(1) All unpublished private rulings and/or letter rulings originating in the Miscellaneous and Special Provisions Tax Division, Excise Tax Branch, of the Office of Assistant Commissioner (Technical), Internal Revenue Service, which were issued between January 1, 1947 and to September 13, 1973 to manufacturers of automobile truck chassis, automobile truck bodies, truck and bus trailer and semi-trailer chassis, truck and bus trailer and semi-trailer bodies, and tractors of a kind chiefly used for highway transportation in combination with a trailer or semi-trailer, or to any trade association of any one or more such manufacturers, in which determinations were made of:

(a) All items includable or excludable in the price for which a taxable article is sold under section 4216(a) of the Internal Revenue Code (or any predecessor section) and any Regulations issued pursuant thereto.

(b) The methods, means, formulae or procedures for determining or computing, by a manufacturer of taxable articles, the applicable constructive sales price, under section 4216(b), section 4216(b)(1), and section 4216(b)(2), of the Internal Revenue Code of 1954 (or any predecessor section), and any Regulations issued pursuant thereto, upon sales by such manufacturers to:

(1) a retailer

(2) a wholesaler

(3) a wholesaler distributor

(4) a user or ultimate consumer

(c) The existence or non-existence under section 4216(b) of the Internal Revenue Code of 1954 (or any predecessor section), and any Regulations issued pursuant thereto, particularly (without limitation) Treasury Regulations Section 148.1–5 and Treasury Regulations 46 (1940), Sections 216.8, 316.10, 316.12, 316.13, 316.14, and 316.15, of:

(1) a retailer

(2) a wholesaler

(3) a wholesaler distributor

(4) sales at retail

(5) sales at wholesale

(6) sales to wholesale distributors

(d) The methods, means, formulae, or procedures for determining or computing, by a manufacturer of taxable articles, the applicable exclusion of *local* advertising charges from the sales prices of taxable articles under section 4216(f) of the Internal Revenue Code of 1954 (or any predecessor section) and any Regulations issued pursuant thereto.

(e) The methods, means, formulae, or procedures for determining or computing, by a manufacturer of taxable articles, the credit for tax paid on tires or inner tubes under section 6416(c) of the Internal Revenue Code of 1954 (or any predecessor section) and any Regulations issued pursuant thereto.

(f) The definition of the term "the purchase price" as used in section 6416(c)(1) of the Internal Revenue Code of 1954 (or any predecessor section) and any Regulations issued pursuant thereto.

(g) The definition(s) of taxable and nontaxable trailers, semi-trailers, truck and bus trailers and semi-trailer chassis, truck and bus trailer and semi-trailer bodies and containers under section 4061(a) of the Internal Revenue Code of 1954 (or any predecessor section) and any Regulations issued pursuant thereto.

(h) The methods, means, formulae or procedures for computing the applicable tax under sections 4061(a) and 4216(b) of the Internal Revenue Code of 1954 (or any predecessor section) and any Regulations issued pursuant thereto on a projected or estimated basis instead of upon an article by article basis.

The terms "private rulings and/or letter rulings" shall include (without limitation) both ordinary letter rulings, unpublished private rulings, and those portions of the responses to Technical Advice requests that are or were intended for issuance to taxpayers.

(2) The files including correspondence, analysis and submissions of fact applicable to the issuance of:

Revenue Ruling 62–68, 1962–1 CB 216

Revenue Ruling 68–254, 1968–1 CB 479

Revenue Ruling 68–202, 1968–1 CB 477

Revenue Ruling 68–519, 1968–2 CB 513

Revenue Ruling 69–394, 1969–2 CB 206

Revenue Ruling 54–25, 1954–1 CB 258

Revenue Ruling 54–448, 1954–2 CB 412

Revenue Ruling 54–61, 1954–1 CB 259

Revenue Ruling 283, 1953–2 CB 425

Revenue Ruling 62–221, 1962–2 CB 251

Revenue Ruling 63–238, 1963–2 CB 519

Revenue Ruling 58–287, 1958–1 CB 426

Revenue Ruling 60–241, 1960–2 CB 329

Revenue Ruling 59–74, 1959–1 CB 350

Revenue Ruling 59–163, 1959–1 CB 353

Revenue Ruling 65–9, 1965–1 CB 491

Revenue Ruling 60–185, 1960–1 CB 412

Revenue Ruling 69–580, 1969–2 CB 209

Revenue Ruling 69–568, 1969–2 CB 209

Revenue Ruling 71–240, 1971–1 CB 372

Revenue Ruling 68–509, 1968–2 CB 508

Revenue Ruling 70–54, 1970–1 CB 218

Revenue Ruling 73–231, IRB 1973–21, 11

(3) Communications with respect to such private rulings and/or letter rulings received by the Internal Revenue Service from persons outside the Executive Branch of the United States Government (including, without limitations, members of Congress, Congressional staff members, and persons acting on behalf of the parties seeking rulings), together with the responses of the Internal Revenue Service to these outside communications. The communications requested include (without limitation) letters, conference memoranda, and memoranda of telephone conversations, and it is,

(4) All items of the letter ruling indexing systems of the Internal Revenue Service as will enable Plaintiffs to ascertain whether additional unpublished private rulings and/or letter rulings, similar to those ordered available above, have been issued by the Treasury, including, but not limited to;

(a) the index-digest card file which is maintained by the Office of the Assistant Commissioner (Technical) involving "reference" (formerly "precedent") private and/or letter rulings files; and

(b) the sets (blocks) of cards maintained in alphabetical order by the Technical Records Section of Defendant that separately refer to all Technical files by taxpayer name and date of the file, beginning in 1954, involving "routine" (formerly "non-precedent") private and/or letter rulings files, and it is

Further ordered, that Defendant shall not destroy or otherwise dispose of or alter any of the foregoing records and documents without the prior approval of this Court, after notice to the Plaintiffs.