**GOVERNMENT LAND BANK**
**Plaintiff**
**V.**
**GENERAL SERVICES**
**ADMINISTRATION, Defendant**

**No. 80-1203-T**

United States District Court
Commonwealth of Massachusetts

**June 26, 1981**

475

Norman T. Byrnes, Esq., counsel for plaintiff

John M. Conley, Esq., counsel for plaintiff

John W. Laymon, AUSA, counsel for defendant

## ORDER OF JUDGMENT

TAURO, D.J. For the reasons stated in a memorandum issued this date, it is ordered that judgment enter, and judgment is hereby entered, in favor of plaintiff. Defendant is hereby ordered to disclose the appraisal report and supporting documents to plaintiff. Plaintiff is ordered not to release any of that material to any person or organization without first having obtained permission from this court.

J. Tauro
United States District Judge

## MEMORANDUM

TAURO, D.J. This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. sec. 552, to obtain disclosure of an appraisal report used in setting a purchase price for federally-owned land in Chicopee, Massachusetts. The parties have stipulated to the relevant facts and submitted this case as a case stated.

### I

Plaintiff Government Land Bank (Land Bank) is a Massachusetts government agency whose principal function is to acquire surplus land from the United States and other sources for eventual redisposition to state agencies and private parties for publicly beneficial use. Defendant General Services Administration (GSA) is a United States government agency empowered to sell certain surplus federal properties to public bodies. During the last few years, the Land Bank has been heavily involved in acquiring surplus United States military property under the jurisdiction of GSA.

This case arises out of some two years of negotiation over the sale of surplus military housing at the former Westover Air Force base in Chicopee. Early in the negotiations, the parties realized that they were far apart on the purchase price—GSA wanted $3,565,000 while the Land Bank valued the property at no more than 30 percent of that figure. During the discussions, GSA maintained that it was bound in some way by an appraisal report it had commissioned an outside expert to produce. Consequently, the Land Bank asked for copies of the appraisal report and related documents, in the hope of challenging some of the factual premises behind the appraisal and convincing GSA to lower the price.[1] But GSA refused to turn over the report and documents, citing Exemption 5 of the Freedom of Information Act, 5 U.S.C. sec. 552(b)(5). Plaintiff, after exhausting administrative remedies, brought this action.

### II

Exemption 5 of the Freedom of Information Act exempts from disclosure all "intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. sec. 552(b)(5). No one disputes that the documents sought here fall within the category of "intra-agency memorandums or letters". Hence, the only issue is whether they would be available by law in litigation with the agency, that is, whether they would be privileged in civil discovery. See, **National Labor Relations Board v. Sears,**

---

[1] The Land Bank feels that GSA appraisals covering other properties have contained significant factual errors. **See** Affidavit of Jeffrey A. Simon.

Roebuck & Co., 421 U.S. 132, 149 (1975).

Defendant asserts two privileges in this case: (1) executive privilege; and (2) a privilege for "confidential commercial information". The concept of "executive privilege" rests on the government's need for uninhibited give-and-take in deliberative processes. See, **Vaughn v. Rosen,** 523 F.2d 1136, 1146 (D. C.Cir. 1975). The theory is that members of government might withhold certain kinds of advice and opinions if they believed that their recommendations might later be made public. The courts, therefore, have drawn a distinction between "factual material" and material "reflecting deliberative or policy-making processes". See **Environmental Protection Agency v. Mink,** 410 U.S. 73, 89 (1973). On the particular issue of whether executive privilege protects appraisal reports, the courts have split. **Compare Hoover v. Dep't of Interior,** 611 F.2d 1132, 1143 (5th Cir. 1980) (denying disclosure) **with Tennesean Newspapers, Inc. v. Federal Housing Administration,** 464 F.2d 657, 660-61 (6th Cir. 1972) (ordering disclosure).

This Court finds the Sixth Circuit's restrictive view of executive privilege to be more in line with the policies underlying the privilege. An appraisal report essentially provides the raw factual data upon which the government agency bases an ultimate conclusion of value. To be sure, the appraiser's work will at times mix opinion with fact, but there is little reason to suppose that such subsidiary opinions of value would be significantly affected by an apprehension of future disclosure. An appraisal report is not part of the give-and-take so important to governmental deliberation—it is the "finished work product of (an outside) professional." **Tennessean Newspapers, Inc. v. Federal Housing Administration,** 464 F.2d 657, 660 (6th Cir. 1972).

The privilege that cloaks "confidential commercial information" poses a more substantial obstacle to disclosure. The Supreme Court drew the contours of the privilege in **Federal Open Market Committee v. Merrill,** 443 U.S. 340 (1979), where it concluded that government agencies have a qualified right to refuse disclosure of "confidential commercial information, at least to the extent that this information is generated by the Government itself in the process leading up to awarding a contract." **Id.** at 360. Justice Blackmun stressed that the privilege is not absolute, and concluded that "the sensitivity of the commercial secrets involved, and the harm that would be inflicted upon the Government by premature disclosure, should continue to serve as relevant criteria" in determining whether disclosure is required. **Id.** at 363.

Assuming **arguendo** that GSA's appraisal report constitutes "confidential" information, the question becomes whether the sensitivity of the information and the potential harm that disclosure would cause justifies GSA's refusal to disclose. In regard to "sensitivity" and "potential harm", defendant argues that disclosure would put the federal government at a severe competitive disadvantage by, in effect, setting a ceiling price for potential purchasers of federal properties. This disadvantage would allegedly undermine both GSA's attempts to sell property to the Land Bank and any subsequent efforts to dispose of the land at public auction.

Defendant's argument, however, is not persuasive. GSA and the Land Bank are now far apart in the negotiations, and each side feels that its valuation of the property rests on a sound appraisal. Disclosure to the Land Bank of GSA's appraisal can only increase the chance of accommodation between the parties. From GSA's point of view, the worst that can happen is that the parties remain at odds over the price and break off negotiations, thereby resulting in GSA's sale of the property at public auction. Failure to disclose would likely produce

the same consequences. It is true that public disclosure of the appraisal might adversely affect bidding at public auction, but such a result can be averted by disclosure to the Land Bank under a court order of confidentiality.

Accordingly, judgment will be entered in favor of plaintiff. Defendant will disclose the appraisal report and supporting documents to plaintiff, and plaintiff will not release any of that material to third parties without first obtaining permission from this Court.

An order will issue.

**J. Tauro**
**United States District Judge**